IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CHRISTOPHER LEMOINE,                                        CV 07-100-MA

          Petitioner,                             OPINION AND ORDER

    v.

CHARLES DANIELS, Warden, FCI-
Sheridan,

        Respondent.


      CHRISTOPHER LEMOINE
      Federal Register No. 26247-048
      Federal Correctional Institution
      3600 Guard Road
      Lompoc, CA   93436

          Petitioner, *Pro Se*

      KARIN J. IMMERGUT
      United States Attorney
      SCOTT ERIK ASPHAUG
      Assistant United States Attorney
      United States Attorney's Office
      District of Oregon
      1000 SW Third Avenue, Suite 600
      Portland, OR   97204-2902

          Attorneys for Respondent

MARSH, Judge:

    Petitioner, an inmate in the custody of the Federal Bureau

of Prisons (BOP), currently housed at the Federal Correctional

Institution (FCI) in Lompoc, California, brings this habeas

corpus proceeding pursuant to 28 U.S.C. § 2241.

1- OPINION AND ORDER

BACKGROUND

In April 2005 petitioner was convicted of one count of wire fraud, in violation of 18 U.S.C. § 1343.  On January 30, 2006, he was sentenced to 77 months imprisonment, 5 years of supervised release, and ordered to pay restitution in the amount of $2,835,126.88.  The sentencing order stated that restitution "shall be due during the period of imprisonment, at the rate of not less than $25 per quarter, and pursuant to the Bureau of Prisons' Inmate Financial Responsibility Program."

Petitioner was initially imprisoned at FCI Lompoc.  On June 21, 2006 he was transferred to FCI Sheridan, in Oregon.  Upon his arrival at FCI Sheridan, the BOP set a restitution repayment schedule for petitioner, under the BOP's Inmate Financial Responsibility Program (IFRP).  *See* 28 C.F.R. § 545.10, et seq. Under the IFRP, the BOP encourages sentenced inmates to voluntarily fulfill their legitimate financial obligations by offering incentives to inmates who comply with the provisions of their financial plan.  *See* 28 C.F.R. § 545.10; *see also Montano-Figueroa v. Crabtree,* 162 F.3d 548, 548 (9th Cir. 1998). BOP staff develop a financial plan for each inmate, based on the inmate's ability to pay.  Incentives for compliance are listed in the IFRP Program Statement, 28 C.F.R. § 545.11, couched in terms of the consequences of not complying:

> (1) Where applicable, the Parole Commission will be notified of an inmate's failure to participate;

2- OPINION AND ORDER

(2) The inmate will not receive any furlough (other than possibly an emergency or medical furlough);

(3) The inmate will not receive performance pay above the maintenance pay level, or bonus pay, or vacation pay;

(4) The inmate will not be assigned to any work detail outside the secure perimeter of the facility;

(5) The inmate will not be placed in UNICOR.  Any inmate assigned to UNICOR who fails to make adequate progress on his/her financial plan will be removed from UNICOR, and once removed, may not be placed on a UNICOR waiting list for six months.  Any exception to this requires approval from the Warden;

(6) The inmate shall be subject to a monthly commissary spending limitation more stringent than those for all inmates.  This more stringent commissary spending limitation for IFRP refuse status inmates shall be at least $25 per month, excluding purchases of stamps, telephone credits, and, if the inmate is a common fare participant, Kosher/Halal certified shelf-stable entrees to the extent that such purchases are allowable under pertinent Bureau regulations;

(7) The inmate will be quartered in the lowest housing status (dormitory, double bunking, etc.);

(8) The inmate will not be placed in a community-based program;

(9) The inmate will not receive a release gratuity unless approved by the Warden;

                            ***

(11) The inmate will not receive an incentive for participation in residential drug treatment programs; and

(12) The inmate's score on "Responsibility" on the Custody Classification form (BP-338) is to be zero.

    For reasons unknown to the court, petitioner did not begin making restitution payments until August 2006.  According to respondent, in June 2006 petitioner "agreed" to pay $132 per

3- OPINION AND ORDER

month in restitution, per the BOP's assessment under the IFRP

that petitioner had the ability to pay more than the $25 minimum

per quarter ordered by the sentencing court.  However, his BOP

account statement indicates that petitioner only made one payment

of $132, on August 7, 2006, because by September 8, 2006 only

$84.69 remained in his account.  Petitioner avers that he was

then placed on "IRFP refuse status," presumably because he had

mismanaged his funds, causing him to incur some of the

consequences of not complying with the IFRP, listed above.

In January 2007, the BOP again reassessed petitioner's

ability to pay, and petitioner "agreed" to pay $25 per quarter.

Petitioner reports that he was also placed on "IFRP exempt"

status at that time, and told that his ability to pay would be

reevaluated again in the future.  Thus, it is not clear whether

petitioner was exempt from participating in the IFRP at the time

he filed this petition, or he was participating in the IFRP and

scheduled to make the minimum restitution payment set by the

sentencing order.  Either way, according to respondent,

petitioner was still subject to the terms of the IFRP.

Meanwhile, on July 11, 2006, petitioner filed a post-

conviction motion seeking modification of the court's sentencing

order.  On October 20, 2006, sentencing Judge Robert J. Timlin

denied defendant's Motion to Modify the Order of Judgment

Regarding Restitution, or in the alternative, Motion to Stay the

Restitution Order.  Petitioner then filed a Notice of Appeal in the United States Court of Appeals for the Ninth Circuit on November 30, 2006.  As of the date of this opinion, that appeal remains pending.

Petitioner filed the petition for habeas corpus relief (#2) with this court on January 22, 2007.  A week later petitioner filed an Ex Parte Application Seeking a Temporary Restraining Order barring respondent from transferring him outside the District of Oregon (#4).  The Honorable Robert E. Jones denied the motion on February 2, 2007 (#5).

On February 5, 2007, the United States filed a motion with the Ninth Circuit Court of Appeals to transfer Lemoine to another BOP facility within the Ninth Circuit.  Lemoine was transferred back to FCI Lompoc on March 25, 2007.  Notably, jurisdiction over habeas corpus proceedings may not be impaired or defeated by the removal of the petitioner from the territorial jurisdiction of the court, where the petition for the writ was initially properly filed.  *Ex parte Mitsuye Endo,* 323 U.S. 283, 305 (1944).

The petition, filed *pro se*, prays for an order enjoining the BOP from requiring petitioner's participation in the IFRP. Petitioner claims he is entitled to this relief on essentially three grounds.  First, petitioner claims the sentencing court's restitution order is unconstitutional because it improperly delegates to the BOP the authority to set a restitution repayment

schedule.  Second, petitioner claims the IFRP program, itself, is unconstitutional because "at least two of the sanctions" for non-compliance with the IFRP "violate the Fourteenth Amendment of the [United States] Constitution."  Petitioner's third ground for relief is that the BOP lacks the authority to increase his restitution payment, notwithstanding that the sentencing order set a minimum payment of $25 per quarter.

DISCUSSION

## I.   Ground One

Respondent urges this court to deny the petition under petitioner's first ground for relief.  Respondent correctly states that the exclusive means of challenging the constitutionality of a federal sentence is by filing a petition under 28 U.S.C. § 2255.

I concur with respondent, and further note that before petitioner can properly avail himself of the procedure for challenging his sentence on collateral review, under 28 U.S.C. § 2255, he must first exhaust his direct appellate review rights. Since his direct appeal of the sentencing court's restitution order is currently pending in the Ninth Circuit, this issue is not ripe for collateral review.  Accordingly, I decline to reach the merits of petitioner's first ground for relief.

## II.   Grounds Two and Three

Respondent contends relief should also be denied under (what

6- OPINION AND ORDER

the court characterizes as) petitioner's second and third grounds

for relief, because, *inter alia*, petitioner has not exhausted his

administrative remedies.

Exhaustion is not required if pursuing available remedies

would be futile.  *Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th

Cir. 1991).  According to respondent, exhaustion would not be

futile in this case because petitioner's projected release date

is January 9, 2009, so sufficient time remains for petitioner to

fully exhaust.  Yet, as petitioner points out, based on

respondent's position that the IFRP is constitutional, and that

the BOP does have authority to subject petitioner to the

consequences of refusing to participate in the IFRP, it appears

exhaustion would be futile as the BOP would almost certainly deny

his appeals, citing the same authority it rests on in this

matter.  *See Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925

(9th Cir. 1993).  Accordingly, I turn to the merits of

petitioner's grounds two and three.

**A.   Ground Two**

In ground two, petitioner argues, in essence, that the IFRP

program is unconstitutional, and specifically that it violates

the Equal Protection clause of the Fourteenth Amendment to the

United States Constitution, because it creates "two separate

classes of prisoners" – those who have the money to pay their

restitution and those who do not.  Specifically, petitioner

7- OPINION AND ORDER

argues,

> the BOP's imposition of sanctions under the IFRP invidiously
> denies a class of inmates a substantial benefit available to
> another class of inmates, based upon a determination which
> [sic] "[t]he Unit Manager is the determining authority when
> it comes to deciding whether an inmate's IFRP payments are
> commensurate with his/her ability to pay.  This decision is
> solely at the discretion of the Unit Manager and is to be
> decided on a case by case basis.

Respondent does not comment on petitioner's Equal Protection argument, but correctly notes that several circuit courts have upheld the IFRP, generally, against constitutional due process challenges.  *See generally Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001); *United States v. Gomez*, 24 F.3d 924, 927 (7th Cir. 1994); *United States v. Williams*, 996 F.2d 231, 234 (10th Cir. 1993); *Dorman v. Thornburgh*, 955 F.2d 57, 58-59 (D.C. Cir. 1992); *Johnpoll v. Thornburgh*, 898 F.2d 849, 851 (2d Cir. 1990); *James v. Quinlan*, 866 F.2d 627, 629 (3rd Cir. 1989).

In addition, the Ninth Circuit implicitly endorsed the IFRP in *U.S. v. Gunning*, 401 F.3d 1145, 1150 (9th Cir. 2005)(*Gunning II*), the principle authority upon which petitioner's third ground for relief rests.  In *Gunning II* the court wrote:

> We do not doubt that the BOP, like the probation office, has
> expertise in the payment area. That has wisely induced it to
> create the IFRP procedure whereby the BOP will "help [the]
> inmate develop a financial plan" and will then "monitor the
> inmate's progress" in meeting the terms of that plan. 28
> C.F.R. § 545.11; *see also* 28 C.F.R. § 545.10. Not
> surprisingly, restitution is one of the obligations with
> which the BOP concerns itself, and it is, indeed, a top
> priority. *See* 28 C.F.R. § 545.11(a)(2).

The Ninth Circuit has also implicitly endorsed the IFRP in *United States v. Haggard*, 41 F.3d 1320, 1329 (9th Cir. 1994)(holding that the district court did not err by imposing a fine based on an inmate's ability to pay through the IFRP), and *Montano-Figueroa v. Crabtree*, 162 F.3d 548 (9th Cir. 1998)(finding no constitutional violation where inmate required to make payments toward fine in order to continue prison employment through the IFRP).

Moreover, I do not find any merit to petitioner's claim that the BOP's classification of inmates who fail to comply with the restitution payment plan set by the BOP Unit Manager, as "IFRP refuse status," violates the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  It does not forbid classifications, but generally forbids the government from treating differently persons who are in all relevant respects alike. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  However, since all laws differentiate between classes of persons, unless a classification targets suspect classes or jeopardizes the exercise of a fundamental right, the Equal Protection Clause requires only that the classification rationally further a legitimate government interest. *See, e.g., Cleburne v. Cleburne*

9- OPINION AND ORDER

*Living Center, Inc*., 473 U.S. 432, 439-441 (1985).

Prisoners do not comprise a suspect class, and avoiding payment of restitution is not a fundamental right.  The government is legitimately interested in enforcing sentencing orders, including orders of restitution, and in generally ensuring that inmates meet their legitimate financial obligations.  The IFRP seeks to further this legitimate government interest by offering prisoners incentives to work during their imprisonment, and consequences for choosing not to[1]. I find the IFRP's incentives and consequences approach is a rational means of achieving this goal.  Thus, the IFRP does not violate petitioner's right to "equal protection of the laws." Petitioner is not entitled to habeas corpus relief under ground two.

**B.    Ground Three**

In ground three, petitioner claims that the BOP lacks the authority to increase his restitution payment beyond the $25 per quarter minimum set by the sentencing court.

Respondent answers this claim by stating that petitioner "is participating in IFRP exactly as directed by Judge Timlin: no less than $25 per quarter," therefore this case does not present a delegation of sentencing authority in contravention of *Gunning*

---

[1] Notably, prisoners do not have a constitutional right to employment or education while incarcerated.  *Baumann v. Arizona Dep't of Corrections*, 754 F. 2d 841, 846 (9th Cir. 1985).

*II."*  Still, this answer does not address the cornerstone of petitioner's grievance, which is that the BOP maintains that it has the authority to increase petitioner's restitution payment schedule at a future IFRP review, should petitioner demonstrate the ability to pay more than $25 per quarter.

I concur with respondent that this case does not present the separation of powers issue upon which *Gunning II* was remanded (*inter alia)*, and upon which I granted habeas corpus relief in *Soroka v. Daniels*, 467 F. Supp 2d 1097 (U.S. Dist. OR 2006). Unlike in those cases, here the sentencing court set a schedule for making restitution payments during incarceration.  Thus, the court did not unlawfully delegate that authority to the BOP. Though the Ninth Circuit has not yet considered whether the BOP may increase an inmate's restitution payment amount without a court order, I find that allowing the BOP to modify the payment schedule in any way, without court approval, amounts to an equally impermissible delegation of authority as allowing the BOP to create the payment schedule.

The court's holding in *Gunning II* turned on Congress' clear mandate in the MVRA, 18 U.S.C. § 3664(f)(2), that the sentencing court "shall...specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid...".  The court found this language means that the "district court must determine the restitution payment schedule."

11- OPINION AND ORDER

504 F. 3d at 1150.  When the BOP endeavors to modify an inmate's restitution payment schedule pursuant to the development of a "financial plan" under the IFRP, the BOP exceeds its authority. *See* 28 U.S.C. § 545.11(b)(1); *see also* BOP Program Statement 5380.08.

Here, while petitioner "agreed" to pay more, he attests to this court that he only agreed in order to avoid the adverse consequences of not agreeing.  Accordingly, I find the BOP's modification of petitioner's restitution payment schedule in June 2006, from $25 per quarter to $132 per month, was not in accordance with the law.  *See* 5 U.S.C. § 706(2)(a)(agency actions will be upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

## CONCLUSION

Based on the foregoing, petitioner's habeas corpus petition (#2) is GRANTED, and the BOP is ordered to maintain petitioner's restitution payment schedule at $25 per quarter.

IT IS SO ORDERED.

DATED this _20 day of July, 2007.

/s/  Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge

12- OPINION AND ORDER